[Dkt. No. 32]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| MANUEL PONTES, PH.D., | |
| Plaintiff, | Civ. No. 18-17317(RMB/KMW) |
| v. | **OPINION** |
| ROWAN UNIVERSITY, | |
| Defendant. | |

**APPEARANCES:**

REGER RIZZO DARNALI LLP
By: Michael J. Needleman, Esq.
700 East Gate Drive, Suite 101
Mount Laurel, New Jersey 08054
    Counsel for Plaintiff Manuel Pontes, Ph.D.

BROWN & CONNERY, LLP
360 Haddon Avenue, P.O. Box 539
Westmont, New Jersey 08108
    Counsel for Defendant Rowan University

**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

In this civil action, Plaintiff Manuel Pontes, Ph.D.
("Plaintiff" or "Dr. Pontes") alleges that Defendant Rowan
University ("Defendant" or "the University") violated his rights
under the New Jersey Constitution and the Family Medical Leave Act
("FMLA") by disciplining Plaintiff for absences taken to care for
his elderly mother in 2017 and 2018.  Although Defendant rescinded

the disciplinary action and reimbursed Plaintiff for lost wages, Plaintiff still wishes to pursue his claims against the University.  Now, this matter comes upon the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Dkt. No. 32].  For the reasons set forth herein, Defendant's Motion to Dismiss will be **GRANTED**.

## I.   FACTUAL BACKGROUND

Plaintiff Manuel Pontes is a tenured member of the faculty in the Marketing Department of the Rohrer College of Business at Rowan University, which is a member of the New Jersey Public University system located in Glassboro, New Jersey.  In his Amended Complaint [Dkt. No. 27], Plaintiff contends that the University violated his rights under the New Jersey Constitution and the FMLA.  In support of his claims, Plaintiff points to two instances when he left the country to care for his "90 year old widowed mother" in India who "has a number of serious, chronic, and debilitating illnesses." Am. Compl. at ¶ 4.

Plaintiff alleges that the first instance was on unspecified dates "prior to November 25, 2017," when he traveled to India to visit his mother.  Plaintiff admits that he neither sought approval for his absence from campus nor notified the University of his need to take leave under the FMLA.  Instead, Plaintiff asserts that he made arrangements to remotely manage his classes using online materials "in accordance with informal, but well

2

established, practices of Rowan."  When Plaintiff's immediate supervisor, Dr. Susan Lehrman, learned that Plaintiff had been absent from campus, Dr. Lehrman questioned Plaintiff about why his time sheets reflected that he was on campus, even though he had been out of the country.  After Plaintiff explained that he was out of the country attending to "an emergency personal matter," Dr. Lehrman agreed to approve his time sheets.  Plaintiff did not inform Dr. Lehrman that his absence from the country was to care for his elderly mother.

In March 2018, Plaintiff once again traveled to India to visit his mother.  In this instance, Plaintiff alleges that he timed the visit to coincide with the University's spring break.[1] Plaintiff departed to India on March 11, 2018 using a one-way ticket.  Plaintiff claims that he intended to purchase a return ticket while in India, but never did so because his mother suffered serious injuries in falls on March 12, 2018 and March 21, 2018.  Needing to attend to his mother's injuries, at some point after March 21, 2018, Plaintiff allegedly informed the Dean that he would need to apply for FMLA and that he would continue to manage his classes by remote instruction until the Dean could find

---

[1] In Defendant's prior motion to dismiss, filed January 9, 2019 [Dkt. No. 7], Defendant attached a copy of the University's "Academic Calendar 2017–2018," which states that the University's Spring Break ran from Monday, March 12, 2018 to Saturday, March 17, 2018. [See Dkt. No. 7–3].  For the reasons discussed below, the Court will consider this document on this Motion to Dismiss.

a replacement to teach his classes.  Plaintiff's request for FMLA leave was approved effective Monday, March 24, 2018.

Although Plaintiff's request for FMLA leave was approved, effective March 24, 2018, the University allegedly disciplined Plaintiff for being "absent from the classroom without justification" for the dates prior to March 24th.  Over the next few months, Plaintiff claims that the University threatened him with various types of discipline, ranging from a one-week suspension without pay to the commencement of de-tenure proceedings.

By Plaintiff's own admission, after Plaintiff challenged the disciplinary action, he was never actually suspended and the University never commenced a de-tenure proceeding.  See Am. Compl., at ¶ 15.  Although Plaintiff was not suspended, he alleges that the University substantially reduced his January 2019 paychecks in retaliation for using FMLA leave.  Id. at ¶ 16.  Pay records attached to Defendant's Motion to Dismiss confirm Plaintiff's allegation that his pay was reduced in January 2019.  [See Dkt. Nos. 32-2, pages 12-13; 34-1, pages 3-7].[2]  However, these records

---

[2] Although Plaintiff does not dispute the authenticity of these pay records, Plaintiff argues that these documents should not be considered on the motion to dismiss.  Specifically, Plaintiff contends that various acronyms such as "RETRO PY" are ambiguous and could refer to "a payment for monies owed from years past having nothing to do with Dr. Pontes's FMLA rights." See Pl.'s Opp. Br. [Dkt. No. 33], at p. 2. For the reasons discussed below,

also indicate that, by March 22, 2019, the University fully reimbursed Plaintiff for all salary withheld from his January 2019 paychecks. See id.

Plaintiff commenced this action, on November 20, 2018, in the Superior Court of the State of New Jersey, Camden County (Case No. CAM-L-4324-18).  Defendant removed the case to this Court on December 18, 2018 [Dkt. No. 1] and moved to dismiss Plaintiff's initial complaint on January 9, 2019 [Dkt. No. 7].  At oral argument, on August 29, 2019, this Court granted Defendant's motion to dismiss without prejudice. [See Dkt. No. 25].  On September 27, 2019, Plaintiff filed the Amended Complaint [Dkt. No. 27].  Now, this matter comes before the Court upon Defendant's Motion to Dismiss the Amended Complaint.

## II.   **LEGAL STANDARD**

When reviewing a plaintiff's complaint on a motion to dismiss, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012).  However, to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

see infra, Section III(A), the Court will consider these documents on the motion to dismiss.

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## III. **ANALYSIS**

In the Motion to Dismiss, Defendant argues that Plaintiff (1) lacks standing because he cannot claim an "injury in fact" since Plaintiff has already received full backpay and has not been further disciplined; (2) fails to state a claim under the New Jersey Constitution; and (3) fails to state claims for either interference or retaliation under the FMLA.  For the reasons discussed below, Defendant's Motion to Dismiss will be granted.

6

## A. *Review of Documents Outside the Pleadings*

As an initial matter, the Court examines whether it may appropriately consider various documents attached to Defendant's motions to dismiss without converting this motion into one for summary judgment; namely, the University's 2017-2018 Academic Calendar and payroll records related to Plaintiff's alleged reduction in pay.  Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Lit., 114 F.3d 1410, 1426 (3d Cir. 1997)(citing Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3rd Cir. 1985)). However, an exception to the general rule is that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." In re Burlington, 114 F.3d at 1426 (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)); see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993)("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document")(quoting Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir. 1993)).

First, the Court finds that it may properly consider the University's 2017-2018 Academic Calendar, which was attached to Defendant's prior motion, in evaluating the instant Motion to Dismiss. See supra, at n.1. Plaintiff has never disputed the authenticity of this Academic Calendar, which appears to have been taken from the Rowan University Undergraduate Catalog for the 2017-2018 academic year. As the timing of spring break is integral to Plaintiff's contention that "Rowan was on its Spring Break" when he left for his trip to India and that he "intended to return for classes after Spring Break," see Am. Compl., at ¶ 9, the Court finds that the Academic Calendar is integral to Plaintiff's claims and may be reviewed on this Motion to Dismiss.

Second, the Court finds that it may also consider the January to March 2019 payroll documents attached to Defendant's Motion to Dismiss (and Defendant's Reply Brief). In arguing that the Court should not consider these records at the motion to dismiss stage, Plaintiff does not dispute the authenticity of the payroll records or the fact that he did, indeed, receive these payments. Rather, Plaintiff argues that these payments could be "monies owed from years past having nothing to do with Dr. Pontes's FMLA rights" and that "[n]o discovery has taken place, and so there is no way to determine when, how and why the payment was made in March 2019." See Pl.'s Opp. Br., at pages 1-2 and n.1. The Court rejects these arguments.

Plaintiff's Amended Complaint specifically alleges that "he was punished for expressing his rights under the FMLA, insofar as his pay for January 2019 was substantially reduced." Am. Compl., at ¶ 16.    Therefore, the payroll records from the time when Plaintiff alleges that his pay was reduced are integral to the harm alleged in the Amended Complaint.    Additionally, to the extent Plaintiff discovered that his pay had been reduced in January 2019, he must have explicitly relied upon his payroll records.

As recognized by the Third Circuit, the "integral" documents exception was intended to prevent a plaintiff from maintaining a claim "by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement [did not support the claim]." See Mele v. Fed. Reserve Bank of New York, 359 F.3d 251, 256 (3d Cir. 2004), as amended (Mar. 8, 2004)(quoting In re Burlington Coat Factory, 114 F.3d at 1426).

These payroll records provide the full context for Plaintiff's allegation that he was not suspended, but compensation was still withheld from his paycheck.    A review of Plaintiff's pay statements from January 11, 2019 and January 25, 2019 confirm that 105 hours' worth of pay were withheld under a notation "SUS WOP."

However, between the January 25, 2019 and March 22, 2019 pay
statements, Plaintiff was reimbursed for 105 hours' worth of pay
under a notation "RETRO PY." [See Dkt. No. 34-1, at pages 3-7].
Although Plaintiff argues that the notations in these payroll
records are ambiguous, this Court questions whether Plaintiff has
any good faith basis for that contention. Given the timing of
these notations, they seem to suggest only one plausible,
unambiguous explanation.[3]

Given that both the academic calendar and the payroll records
appear to be indisputably authentic and unambiguous, at this
juncture, this Court does not see any benefit to opening discovery
and converting this motion into one for summary judgment.
However, if Plaintiff can make a good faith argument that this
Court is mistaken about the authenticity or meaning of either the
academic calendar or payroll records, the Court would be willing
to entertain such an assertion on a motion for reconsideration.

_____

[3] In the Motion to Dismiss, the University explains that the money
was removed from Plaintiff's paycheck in anticipation of the
planned suspension without pay, but that the University repaid the
money after it decided not to follow through with the suspension.
See MTD, at p. 3, n. 2. Although the Court does not consider that
statement at this juncture for the truth of the matter asserted,
the payroll records are consistent with that explanation.

**B. *Standing to Assert FMLA Claims***

In the Motion to Dismiss, Defendant contends that Plaintiff lacks standing because he has failed to allege a redressable "injury in fact."  Specifically, Defendant argues that Plaintiff's alleged injuries cannot be redressed by a favorable judgment, as the University has already rescinded any adverse action against Plaintiff and provided backpay for lost wages.  This Court agrees with Defendant.

Federal courts are courts of limited jurisdiction and may only consider those actions that meet the case-or-controversy requirements of Article III. <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u>, 528 U.S. 167, 180 (2000).  To meet the minimal constitutional mandate for Article III standing Plaintiffs must show (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that the injury will "likely" be "redressed by a favorable decision." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).  An "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." <u>Id.</u>, at 560.

Relevantly, "under the FMLA's enforcement provision, an employer is liable only for compensation and benefits lost 'by

11

reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). King v. Inova Health Care Servs., 2020 WL 2108728, at *11 (E.D. Va. May 1, 2020)(citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)).

In this case, Plaintiff lacks a redressable injury because the alleged harms have already been cured by the University.  See King, 2020 WL 2108728, at *11 (holding that plaintiff lacked standing for FMLA claim where defendant took timely corrective action to rescind discipline).  First, Plaintiff admits that the University discontinued its pursuit of a de-tenure proceeding and that he was "not in fact suspended." See Am. Compl., at ¶¶ 15-16. Second, the payroll records presented by Defendants demonstrate that the University reimbursed Plaintiff for all wages removed from his January 2019 paychecks.

Because Plaintiff's redressable injuries have already been cured through the University's corrective action, Plaintiff would not be entitled to any further relief, such as punitive damages or attorneys' fees, even if he could succeed in demonstrating that Defendant violated the FMLA.  Notably, the Third Circuit has confirmed that punitive damages, pain and suffering, and emotional distress damages are not recoverable under the FMLA. See Harris v.

United States Postal Serv., 2018 WL 5849467, at *2 (D.N.J. Nov. 7, 2018)(citing Brown v. Nutrition Management Services, Co., 370 F. App'x 267, 270 at n.3 (3d Cir. 2010). As to attorneys' fees, where "a plaintiff has no ability to obtain a favorable judgment for damages or equitable relief, attorney's fees are not a redressable injury-in-fact because a favorable judgment is a prerequisite for an FMLA attorney's fees award." King, 2020 WL 2108728, at *11. As such, Plaintiff cannot maintain standing for his FMLA claims.

### C. New Jersey Constitutional Claims

In the Amended Complaint, Plaintiff alleges that the University violated his substantive due process rights under the New Jersey Constitution by unlawfully interfering with his employment at a state institution.[4] Specifically, Plaintiff argues that his property rights were infringed upon when the University threatened to suspend him without pay and begin a de-tenure proceeding, which culminated in salary (which was later reimbursed) being deducted from his January 2019 paycheck. In turn, Defendant argues that these are not cognizable claims under

---

[4] Although Plaintiff's Amended Complaint does not refer to any specific provision of the New Jersey Constitution, Plaintiff's claim appears to be based upon article 1, paragraph 1 of the New Jersey Constitution, which recognizes all persons' rights in "acquiring, possessing, and protecting property."

the New Jersey Constitution.  This Court once again agrees with
Defendant.

Substantive due process "protects individuals from the
'arbitrary exercise of the powers of government' and 'governmental
power [...] being used for [the] purposes of oppression.'" Harvard
v. State, 460 N.J. Super. 433, 444 (App. Div. 2018)(quoting
Filgueiras v. Newark Pub. Schs., 426 N.J. Super. 449, 469 (App.
Div. 2012), certif. denied, 212 N.J. 460 (2012)). However, claims
for substantive due process under article one, paragraph one of
the New Jersey Constitution are "reserved for the most egregious
governmental abuses against liberty or property rights, abuses
that shock the conscience or otherwise offend judicial notions of
fairness and that are offensive to human dignity." Salah v.
Gilson, 2013 WL 1688379, at *9 (N.J. Super. Ct. App. Div. Apr. 19,
2013)(quoting Filgueiras, 426 N.J. Super. at 469).

In this case, the University never suspended Plaintiff
without pay or commenced the de-tenure proceeding against
Plaintiff, and even if it did, Plaintiff would still lack a
substantive due process claim.  Notably, the United States Court
of Appeals has held that tenured public employment is not a
property interest entitled to substantive due process protection.
See Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 142 (3d
Cir. 2000). In Nicholas, the Third Circuit noted that tenured
public employment "is a wholly state-created contract right,"

14

which "bears little resemblance to other property rights and interest that been deemed fundamental under the Constitution." Id. at 143.

Logically, if public employees cannot assert a property interest in continued tenured employment, they also cannot assert a claim for continued salary from that same employment. Therefore, Plaintiff cannot state a substantive due process claim under the New Jersey Constitution for a property interest in salary withheld during the period of time that the University had intended to suspend him without pay.[5]

### D. FMLA Claims

Although the Court finds that Plaintiff lacks standing for his FMLA claims, the Court still addresses Defendant's argument that Plaintiff fails to state a claim for either FMLA interference or retaliation.  The Court finds that, even if Plaintiff had alleged a redressable injury-in-fact, both the FMLA interference and retaliation causes of action are deficient as a matter of law.

First, to state an FMLA interference claim, a plaintiff must allege that: (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff

---

[5] Even Plaintiff could state a claim, it would be moot because Plaintiff's salary has already been repaid. See supra, at n.3

gave notice to the defendant of his intention to take FMLA leave;
and, (5) the plaintiff was denied benefits to which he was
entitled under the FMLA. Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d
Cir. 2014). "Put more succinctly, [to] state a claim for
interference, an 'employee only needs to show that he was entitled
to benefits under the FMLA and that he was denied them.'" Callison
v. City of Phila., 430 F.3d 117, 119-20 (3d Cir. 2005). The
employee need not show discriminatory intent. Id. at 120.

    In this case, Plaintiff's allegations of future, hypothetical
interference with his FMLA rights are insufficient to state a
claim.  As a preliminary matter, "for an interference claim to be
viable, the plaintiff must show that FMLA benefits were actually
withheld." Capps v. Mondelez Glob., LLC, 847 F.3d 144, 156 (3d
Cir. 2017).  Here, Plaintiff has not alleged that he was ever
denied the opportunity to take FMLA leave.  Rather, Plaintiff
contends that Defendant's actions "will interfere with Dr. Pontes'
ability to take future FMLA leave as they have created in him a
fear that doing so will subject him to disciplinary proceedings."
Am. Compl., at ¶ 25 (emphasis added).  These allegations are
purely conjectural and hypothetical.  Absent any allegation that
FMLA benefits were actually withheld, Plaintiff's cause of action
for FMLA interference must be dismissed.

    Second, to plead a claim for FMLA retaliation, the Complaint
must contain enough facts to plausibly suggest that the plaintiff:

(1) took FMLA leave; (2) suffered an adverse employment action;
and, (3) that the adverse action was causally related to his
leave. Hansler v. Lehigh Valley Hosp. Network, 798 F.3d 149, 158-
59 (3d Cir. 2015). As Plaintiff admits that he was not suspended
and that the University never pursued a de-tenure proceeding, the
only possible adverse employment action would be the reduction in
his January 2019 compensation, which has since been refunded.[6]

The University's June 4, 2018 disciplinary letter, attached
to Plaintiff's initial complaint and properly considered on this
Motion to Dismiss, states that Plaintiff was disciplined for his
"absence without notification, dereliction of instructional
duties, and the fact that this is not the first time he has
engaged in this kind of conduct." [Dkt. No. 1-3].

Rather suggesting that the University's stated reasons for
discipline were pretextual, Plaintiff's own allegations imply that
the University had a legitimate, non-discriminatory, and non-
retaliatory reason for imposing discipline. Indeed, Plaintiff
admits that that he left the Country on a one-way ticket to India,

---

[6] Plaintiff only alleges that he requested and took one FMLA
leave, beginning on March 24, 2018. Although Plaintiff seemingly
invokes the FMLA in relation to his unrequested absence from
campus in the fall of 2017, Plaintiff never alleged that he
requested FMLA leave on that occasion. Instead, Plaintiff
informed his supervisor only that he was attending to an
"emergency personal matter." As Plaintiff never alleges that he
requested or took FMLA leave in the fall of 2017, Plaintiff cannot
maintain a cause of action for FMLA retaliation in relation to
that absence from campus.

remained in India beyond the end of spring break, and was out of the country for a week before he was approved for FMLA leave.

For example, in the Amended Complaint, Plaintiff alleges that he was forced to request FMLA leave after his mother sustained injuries in a fall on Wednesday, March 21, 2018. However, the University's academic calendar indicates that spring break ended on Saturday, March 17, 2018.[7]  In turn, Plaintiff own allegations amount to a concession that he had already remained in India for four days past the end of spring break by the time he requested FMLA leave.  Additionally, Plaintiff acknowledges that his FMLA leave was not approved until March 24, 2018, a full week after spring break had ended.  As such Plaintiff essentially concedes that he was he was "absent from the classroom without justification" from March 18th to 23rd.

Even accepting the allegations in Plaintiff's Amended Complaint as true, these allegations fail to support any inference of that the University's stated reasons for discipline were pretextual and causally connected to Plaintiff's approved FMLA

---

[7] As previously discussed, supra, at n.1, Plaintiff specifically alleges that he timed his trip to coincide with spring break, therefore, the University's academic calendar is integral to this claim and provides context for the dates of Plaintiff's trip.

leave.  Accordingly, Plaintiff fails to state a claim for retaliation under the FMLA.[8]

## IV.   CONCLUSION

As previously noted, to the extent Plaintiff can set forth a good faith argument that this Court is mistaken about the authenticity or meaning of the academic calendar and payroll records, submitted by Defendant and considered by the Court, Plaintiff may set forth those arguments in a motion for reconsideration.  However, given that those documents appear to be authentic and unambiguous, the Court sees no reason to convert the motion into one for summary judgment or open discovery. Accordingly, Defendant's Motion to Dismiss will be **GRANTED** and Plaintiff's Amended Complaint will be **DISMISSED**.  An appropriate Order shall issue on this date.

DATED: July 23, 2020

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

---

[8] Even if Plaintiff had alleged causality, his claim for FMLA retaliation would have been moot because his discipline was rescinded and he was reimbursed for all lost wages.

19