ECF No. 115

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **MANUEL PONTES, PH.D**, <br><br> Plaintiff, <br><br> v. <br><br> **ROWAN UNIVERSITY,** <br><br> Defendant. | Civil No. 18-17317 (RMB/MJS) |

**O P I N I O N  &  O R D E R**

This matter comes before the Court on the motion filed by defendant Rowan University ("Defendant" or "Rowan") to compel compliance with the July 18, 2023 third-party subpoena served upon Dr. Nancy Pontes, the non-party spouse of plaintiff Manuel Pontes [ECF No. 115]. The Court has received and reviewed Plaintiff's brief in opposition to the motion [ECF No. 117], as well as Defendant's reply [ECF No. 119]. The Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons that follow, Defendant's motion is **GRANTED in part** and **DENIED in part.**

**I.      Background**

In this employment discrimination lawsuit, Plaintiff, a tenured professor in the Marketing Department of Defendant's Rohrer College of Business, alleges violations of the New Jersey Wage Payment Law ("WPL"), N.J.S.A. 34:11-4.1 et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., against Defendant, a public university located in Glassboro, New Jersey. Amended Compl., ECF No. 42 ¶¶ 1-2, 19-24.

1

This motion is the latest entry in a series of disputes, all of which stem from Plaintiff's request to appear virtually for a deposition that was originally scheduled to occur in person in January 2023. The Court denied Plaintiff's request as untimely and lacking good cause and ordered the deposition to proceed as-scheduled, but directed Defendant to accommodate Plaintiff's health concerns. ECF No. 82. Plaintiff thereafter failed to appear for the deposition on account of an unexpected medical emergency, prompting the parties to file a flurry of letters with this Court. ECF Nos. 83-86. In Defendant's letter, Defendant sought sanctions for Plaintiff's failure to appear in the form of compensation for the court reporter's fee. ECF No. 84. Plaintiff's letter, filed before Defendant's, sought to preemptively address the request for sanctions by explaining the basis for Plaintiff's last-minute failure to appear and refuting Defendant's characterization of the facts. ECF No. 83. Plaintiff's letter included several exhibits, including emails between his counsel and defense counsel, a transcript from the deposition in which the attorneys put Plaintiff's failure to appear on the record, and, of particular interest for purposes of this motion, an email exchange between Plaintiff's attorney and Nancy Pontes, Plaintiff's wife. Id. In this exchange, Nancy Pontes expressed outrage at Defendant's then-impending request for sanctions, sought advice about how Plaintiff could address the sanctions issue, and informed counsel of developments regarding Plaintiff's health and Defendant's treatment of Plaintiff at work. Id. Counsel's reply informed Nancy Pontes that he would be separately sending her and Plaintiff a summary of another witness's deposition testimony, discussed his thoughts on Defendant's litigation strategy, and indicated that he would provide an update about his own strategy shortly. Id.

After the emails were filed on the docket, Defendant expanded its request for sanctions to include reimbursement for the appearance fee for Defendant's court reporter, Defendant's attorneys' fees and costs in submitting the initial application, and the fees and costs associated

with having to prepare for Plaintiff's new deposition date. ECF No. 85. Defendant also indicated that, based on the email exchange, it would be serving a subpoena on Nancy Pontes and noticing her deposition. Id. In his response, Plaintiff's counsel advised the Court that the exchange with Nancy Pontes had been inadvertently included with the initial letter. ECF No. 86.

Upon receiving the letters, the Court held a conference on February 17, 2023, and subsequently entered an order directing Plaintiff to appear for a deposition on March 2, 2023, and reserving its decision on the sanctions until after the deposition was complete. ECF No. 88. However, on February 27, 2023, Plaintiff sought a 120-day stay of the matter due to his worsening health. ECF No. 89. The Court granted his request after conducting an in camera review of Plaintiff's medical records, which were submitted in support of Plaintiff's request at the Court's direction. ECF No. 94. The Court restored the case to the active docket on July 5, 2023. ECF No. 98. Defendant served the subpoena at issue on Nancy Pontes shortly thereafter, on July 19, 2023. ECF No. 115-2 at 114. On August 3, 2023, Plaintiff filed a letter motion which sought, in relevant part, to quash the subpoena because it sought communications protected by the attorney-client privilege. ECF No. 103. Defendant opposed the request. ECF No. 105. After learning at a November 30, 2023 conference that Nancy Pontes had not produced any documents in response to the subpoena, the Court directed Defendant to file a formal motion to enforce compliance. ECF No. 114. Defendant thereafter filed this motion. ECF No. 115.

II. **Legal Standard**

"Rule 45 of the Federal Rules of Civil Procedure establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit." First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013); Fed. R. Civ. P. 45(d). "Pursuant to Rule 45, a party may compel production of documents within the 'possession,

custody, or control' of non-parties." In re Novo Nordisk Sec. Litig., 530 F. Supp. 3d 495, 501 (D.N.J. 2021). The party serving the subpoena "'must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'" Id. (quoting Fed. R. Civ. P. 45(d)(1)). As with all discovery, the scope of discovery under Rule 45 is subject to the limits set by Rule 26(b). Biotechnology Value Fund, L.P. v. Celera Corp., Civ. No. 14-4046, 2014 WL 4272732, at *1 (D.N.J. Aug. 28, 2014). Consequently, under Rule 45, parties may obtain from non-parties "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); Mallinckrodt LLC v. Actavis Lab'ys FL, Inc., Civ. No. 15-3800, 2017 WL 5476801, at *2 (D.N.J. Feb. 10, 2017) (quoting Fed. R. Civ. P. 26(b)(1)). "Courts have construed this rule liberally, creating a broad range for discovery which would 'encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

"Rule 45 bestows 'broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands.'" Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP, Civ. No. 11-7013, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012) (quoting Lefta Assocs. v. Hurley, Civ. No. 09-2487, 2011 WL 1793265, at *2 (M.D. Pa. May 11, 2011)). "Once the subpoenaing party has shown that the documents requested are relevant, the objecting party must demonstrate why discovery should nevertheless be denied." Novo Nordisk, 530 F. Supp. 3d at 501. However, while a court "has broad discretion regarding the enforcement of subpoenas," N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp., Civ. No. 98-4781, 2021 WL 4551337, at *2 (D.N.J. Oct. 5, 2021)

(quoting Tattle Tale, 2012 WL 1191214, at *3), courts must quash or modify subpoenas that: (1) fail to allow a reasonable time to comply; (2) require excessive travel; (3) "require[] disclosure of privileged or other protected matter, if no exception or waiver applies"; or (4) subject a person to an undue burden. Fed. R. Civ. P. 45(d); Biotechnology Value Fund, 2014 WL 4272732, at *1. Courts also have the authority to "quash or modify subpoenas that fall outside the scope of permissible discovery." Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A., Civ. No. 20-11050, 2022 WL 2191519, at *2 (D.N.J. June 17, 2022).

### III. Discussion

The subpoena at issue seeks:

> 1. All documents and communications, including emails and text messages, exchanged between [Nancy Pontes] and any person other than Plaintiff, from January 1, 2017 to present, that refer or relate to Plaintiff's lawsuit against Defendant and/or any allegation or cause of action set forth in Plaintiff's Complaint.
>
> 2. All documents and communications, including emails and text messages, exchanged between [Nancy Pontes] and [Plaintiff's counsel] outside the presence of Plaintiff, from January 1, 2017 to present, that refer or relate to Plaintiff's lawsuit against Defendant and/or any allegation or cause of action set forth in Plaintiff's Complaint.
>
> 3. All documents and communications, including emails and text messages, exchanged between [Nancy Pontes] and [Plaintiff's counsel] within the presence of Plaintiff, from January 1, 2017 to present, that refer or relate to Plaintiff's lawsuit against Defendant and/or any allegation or cause of action set forth in Plaintiff's Amended Complaint.
>
> 4. All documents and communications, including emails and text messages, exchanged between [Nancy Pontes] and any person at [Plaintiff's counsel's law firm] outside the presence of Plaintiff, from January 1, 2017 to present, that refer or relate to Plaintiff's lawsuit against Defendant and/or any allegation or cause of action set forth in Plaintiff's Complaint.
>
> 5. All documents and communications, including emails and text messages, exchanged between [Nancy Pontes] and any person at [Plaintiff's counsel's law firm] outside the presence of Plaintiff, from

> January 1, 2017 to present, that refer or relate to Plaintiff's lawsuit against Defendant and/or any allegation or cause of action set forth in Plaintiff's Complaint.
>
> 6. All documents and communications demonstrating the establishment of an attorney-client relationship between [Nancy Pontes] and [Plaintiff's counsel] and/or any attorney at [Plaintiff's counsel's law firm]. Please advise if no such document or communication exists.

See ECF No. 115-2 at 110. As an initial matter, the Court agrees that the subpoena seeks communications that are generally relevant. Therefore, Plaintiff bears the burden of demonstrating that discovery should nevertheless be denied.[1] Novo Nordisk, 530 F. Supp. 3d at 501. To this end, Plaintiff argues that the communications sought are protected by the attorney-client privilege because Nancy Pontes is his wife and primary caretaker, and therefore his agent for the purposes of this litigation. ECF No. 117 at 7.

As articulated by the Third Circuit,[2] "[t]he attorney-client privilege protects (1) communications (2) between 'privileged persons' (3) made in confidence (4) intended to receive or give legal assistance." IQVIA, Inc. v. Veeva Systems, Inc., Civ. No. 17-0177, 2019 WL 2083305, at *3 (D.N.J. May 13, 2019) (quoting In re Teleglobe Commc'ns Corp., 493 F.3d 345,

---

[1] The Court notes that, generally speaking, "[a] party lacks standing to seek the modification or quashing of a subpoena upon a third party unless the party claims a personal privilege is implicated." Conforti v. St. Joseph's Healthcare Sys., Inc., Civ. No. 17-0050, 2019 WL 3847994, at *2 (D.N.J. Aug. 15, 2019) (quoting DIRECTV, Inc. v. Richards, Civ. No. 03-5606, 2005 WL 1514187, at *1 (D.N.J. June 27, 2005)). Here, because Plaintiff is asserting that the documents are protected by attorney-client privilege, which is a personal privilege, Hoffmann-LaRoche, Inc. v. Roxane Lab'ys, Inc., Civ. No. 09-6335, 2011 WL 1792791, at *4 (D.N.J. May 11, 2011) (noting that the attorney-client privilege "belongs to the client"), he has standing to challenge this third-party subpoena so long as he can present enough facts to establish that the privilege exists, Crown Fin. Corp. v. McDonald's Corp., Civ. No. 12-4120, 2013 WL 12155435, at *2 (D.N.J. Nov. 25, 2013).

[2] This case is before the Court based on federal question jurisdiction, and therefore Plaintiff's assertion of privilege is analyzed under the federal common law. Pearson v. Miller, 211 F.3d 57, 66 (3d Cir. 2000); Fed. R. Evid. 501.

359 (3d Cir. 2007)). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." In re Teleglobe, 493 F.3d at 359. Thus, "[a]s a general matter, the privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services." Dempsey v. Bucknell Univ., 296 F.R.D. 323, 327 (M.D. Pa. 2013) (quoting Miller v. Haulmark Transp. Sys., 104 F.R.D. 442, 445 (E.D. Pa. 1984)). Similarly, communications between an attorney and a third party may be protected by the privilege if the third party's involvement is "necessary to the lawyer's provision of legal advice." La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 312 (D.N.J. 2008). However, "[i]n all instances, the facts underlying any given communication remain discoverable." Id. at 305. As the party claiming the privilege, Plaintiff bears the burden of demonstrating that the privilege applies. See Allen v. Banner Life Ins. Co., 340 F.R.D. 232, 237 (D.N.J. 2022).

Courts in the Third Circuit are generally "loath to construe the privilege broadly and ha[ve] viewed what assists an attorney in rendering legal advice narrowly." IQVIA, Inc., 2019 WL 2083305, at *4 (citing United States v. Rockwell Int'l, 897 F.2d 1255, 1264 (3d Cir. 1990)). "To qualify for protection [under the attorney-client privilege], statements to and from third parties must 'be made in confidence for the purpose of obtaining legal advice from the lawyer.'" HPD Lab'ys, Inc. v. Clorox Co., 202 F.R.D. 410, 414 (D.N.J. 2001) (emphasis omitted) (quoting United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)). Moreover, the third party must act as a "'translator or interpreter of client communications,'" In re G-I Holdings Inc., 218 F.R.D. 428, 435 (D.N.J. 2003) (quoting United States v. Ackert, 169 F.3d 136, 140 (2d Cir. 1999)), such that the third party's communication is "needed to interpret complex issues in order to provide

7

competent legal advice or to facilitate the attorney-client relationship," Cellco P'ship v. Certain Underwriters at Lloyd's London, Civ. No. 05-3158, 2006 WL 1320067, at *4 (D.N.J. May 12, 2006), or otherwise "improve the comprehension of the communications between attorney and client," Ackert, 169 F.3d at 139. Crucially, "the attorney-client privilege does not apply just because a statement was made by or to an attorney." In re Riddell Concussion Reduction Litig., Civ. No. 13-7585, 2016 WL 7108455, at *3 (D.N.J. Dec. 5, 2016). Thus, "[a] litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994). Similarly, "[c]ommunication between an attorney and a third party does not become shielded by attorney-client privilege solely because the communication proves important to the ability to represent the client." In re G-I Holdings, 218 F.R.D. at 436.

Applying these principles, the Court finds that Plaintiff has not met his burden of demonstrating that all of the communications sought are categorically privileged. The first subpoena category seeks documents and communications between Nancy Pontes and "any person other than Plaintiff." ECF No. 115-2 at 110. Even if the Court accepted that Nancy Pontes qualifies as a "privileged person" in this litigation, Plaintiff has not produced any evidence to suggest that all communications in this category were made to an attorney at all, let alone contain legal advice. The sixth category seeks documents and communications that would demonstrate the establishment of an attorney-client relationship between Nancy Pontes and Plaintiff's counsel. Id. As a general matter, "the attorney-client privilege shields access to the substance of attorney-client communications," but "[i]nformation such as representation itself or the date upon which services are rendered are freely discoverable." In re G-I Holdings, 218 F.R.D. at 431; see also Jones v.

8

Dalton, Civ. No. 09-138, 2011 WL 13363748, at *2 (D.N.J. May 10, 2011) ("Generally, retainer agreements are not privileged and can be within the permissible scope of discovery."). Therefore, the Court cannot find that all communications in these categories would be categorically privileged.

The Court is likewise unable to conclude on this record that Nancy Pontes served a role in this litigation that would shield all of her communications with counsel from disclosure. Plaintiff argues that Nancy Pontes was a necessary intermediary between himself and his attorney because Plaintiff's health challenges left Plaintiff unable to personally communicate with his attorney. ECF No. 117 at 10. This argument is somewhat supported by the email exchange that prompted the subpoena, in which she and Plaintiff's attorney exchanged updates relevant to the forthcoming sanctions request. However, apart from his bare assertion that "one suffering COVID and then long-COVID would need his spouse's help in communicating," Plaintiff has not offered any other evidence that suggests he was incapable of communicating with his attorney himself. ECF No. 117 at 10.[3] See Hendrick v. Avis Rent A Car Sys., Inc., 944 F. Supp. 187, 189 (W.D.N.Y. 1996) (finding privilege could apply to communications between plaintiff's parents and his attorney where "plaintiff, a college student, was involved in a catastrophic, if not life threatening, automobile accident" that "rendered plaintiff a quadriplegic with complete and permanent paralysis," and parents certified that they sought counsel on plaintiff's behalf because his condition left him physically unable to do so). On the contrary, in his August 1, 2023 deposition, Plaintiff testified that he does not copy Nancy Pontes on his emails to his attorney and, to his knowledge,

---

[3] The Court recognizes that Plaintiff's health conditions previously prevented him from fully participating in the case, which led him to seek and obtain a stay of this litigation. ECF Nos. 91, 94. However, the Court also notes that the stay was lifted based on Plaintiff's representation that he was prepared to continue with the litigation. ECF Nos. 97, 98.

neither did his counsel. ECF No. 115-2 at 29. Plaintiff also testified that he did not speak with his wife about the substance of his deposition testimony. Id. at 26. Neither Plaintiff nor Nancy Pontes have produced any certifications that suggest Nancy Pontes occupies a role in the litigation that would permit her to participate in or receive disclosure of otherwise privileged communications. See Dempsey, 296 F.R.D. at 329-30 (finding privilege extended to plaintiff's parents where parents "played an essential role in securing legal representation" for plaintiff, "actively assisted his attorneys in preparing a defense" to various charges, and attorney averred that he "enlisted the assistance of [plaintiff's] parents in gathering and analyzing information and helping to prepare [plaintiff's] defense"). Nor is there any evidence that Plaintiff's counsel was "relying on [Nancy Pontes] to translate or interpret information given to [counsel] by his client." Ackert, 169 F.3d at 139. Rather, the record presented suggests that Plaintiff is, at least on the whole, capable of communicating with his attorney personally.

Defendant urges the Court to conclude that none of the communications are entitled to privilege, and therefore all should be produced. The Court notes that, in opposing the motion, Plaintiff has essentially asked this Court to accept that Nancy Pontes was at all times a necessary intermediary between Plaintiff and his attorney, and that any and all communications Nancy Pontes had regarding this lawsuit or Plaintiff's allegations were in the pursuit of legal advice. Not only is this position unsupported by the record, but also neither position presents an effective approach to arguing privilege disputes. See Rockwell Int'l, 897 F.2d at 1265 ("[C]laims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion."). Indeed, in light of Plaintiff's fluctuating physical condition, it is possible that a subset of the communications between Nancy Pontes and Plaintiff's counsel are entitled to protection. Moreover, while courts generally find that an attorney's communications with their client's non-

10

party spouse are not privileged, see, e.g., Johnson v. Oscar Winski Co., Cause No. 4:18-CV-88, 2020 WL 4539620, at *3-4 (N.D. Ind. Aug. 6, 2020) (declining to expand attorney-client privilege to "any and all communications between two clients, their attorney, and the spouse of a client"); Halligan v. Bederson, LLP, Docket No. A-0980-20, 2021 WL 2201761, at *3 (N.J. App. Div. June 1, 2021) (affirming rejection of privilege as to communications between attorney, attorney's clients, and clients' wives), others have extended the privilege to communications under specific circumstances, see Bulgari v. Bulgari, 649 F. Supp. 3d 8, 12 (S.D.N.Y. 2023) (extending privilege to communications between client's spouse where client relied on long-term romantic partner's ability to communicate complex financial knowledge relevant to case and client maintained reasonable expectation of confidentiality); IsoNova Techs. LLC v. Rettig, Case No. 20-CV-71, 2023 WL 3741632, at *3 (N.D. Iowa May 31, 2023) (holding emails between attorney, client, and spouse privileged). In short, this dispute involves highly fact-sensitive determinations that are not susceptible to generic resolution.

In light of the foregoing, the Court agrees that Plaintiff has not met his burden in establishing that all of the subpoenaed communications are blanketly protected by the attorney-client privilege.[4] However, given the importance of the attorney-client privilege and in light of the

---

[4] Because "[a] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden," Gov't Emps. Ins. Co. v. Trnovski, Civ. No. 16-4662, 2018 WL 5281424, at *2 (D.N.J. Oct. 23, 2018) (alteration in original) (quoting Universitas Educ., LLC v. Nova Grp., No. 11 Civ. 1590, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013)), Plaintiff's arguments regarding the asserted irrelevance and improper purpose of the subpoena do not require a contrary result. While there is some authority for the position that a party can move for a protective order in regard to a third-party subpoena on relevance grounds, see Constantino v. City of Atlantic City, Civ. No. 13-6667, 2015 WL 12806490, at *3 (D.N.J. Nov. 4, 2015) (collecting cases), Plaintiff's arguments are entirely conclusory and lack the specificity required to state good cause for a protective order. See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) ("'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing.") (quoting Cipollone v. Liggett Grp., 785 F.2d 1108, 1121 (3d Cir. 1986))). That said, while the Court has found that the subpoena seeks generally relevant

specific circumstances underlying this dispute, the Court will permit Plaintiff to reassert his privilege claims on a document-by-document basis, as contemplated by the Federal Rules. Fed. R. Civ. P. 26(b)(5)(A). Accordingly, Plaintiff will have the opportunity to review any responsive documents before they are provided to Defendant. To the extent that Plaintiff can identify specific communications in which Nancy Pontes acted as a necessary intermediary between him and his attorney, or which otherwise contain privileged information or protected work product, Plaintiff may reassert his claims and produce a privilege log for any materials that are withheld on that basis.[5] The privilege log must describe each withheld document in sufficient detail to establish each element of the claimed protection, consistent with the principles set forth in this order. Stevens v. Sullum, Civ. No. 3:20-CV-1911, 2023 WL 2226794, at *11 (M.D. Pa. Feb. 24, 2023). Thus, at a minimum, the log should: (1) identify each document; (2) identify the individuals who were parties to the communications; and (3) describe the content in sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Altchem Env't Servs., Inc. v. Burlington Cnty. Bd. of Chosen Freeholders, Civ. No. 07-0800, 2009 WL 10690433, at *2 (D.N.J. Sept. 14, 2009). Documents, particularly emails and email chains, that

---

material, the Court notes that the subpoena functionally seeks every communication that Nancy Pontes had with any individual about Plaintiff's lawsuit or his allegations over a seven year period. The Court has concerns about the breadth of such a subpoena in light of the Court's independent obligation to guard against unreasonable burden or expense. See Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 45(d); Biotechnology Value Fund, 2014 WL 4272732, at *2 (noting relevance, need, breadth of request, time period, particularity of description, burden, and nonparty status all bear on reasonableness of subpoena). Therefore, nothing in this opinion should be construed as foreclosing the opportunity for Nancy Pontes to raise similar arguments, to the extent that she has not already waived her right to do so. See Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(d).

[5] Because the instant dispute concerns Plaintiff's privilege claims only, the Court passes no opinion as to whether and on what grounds Nancy Pontes may withhold documents from her production or otherwise challenge the subpoena in her own right. To the extent that Nancy Pontes withholds documents from her production, she shall also produce a privilege log that identifies the grounds for withholding and conforms to the other requirements set forth herein.

contain both privileged and nonprivileged content should be produced with the privileged content redacted. Stevens, 2023 WL 2226794, at *11; see Rhone-Poulenc Rorer Inc., 32 F.3d at 864. If, after the production and review of logs that are consistent with the foregoing guidelines, disputes remain as to the documents withheld, the parties may seek a final determination of the privilege by the Court.

For all of the foregoing reasons,

**IT IS** on this **23rd day** of **July 2024,**

**ORDERED** that Defendant's motion to compel Nancy Pontes to comply with the subpoena is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Dr. Nancy Pontes, subject to any timely objection raised on her own behalf, shall produce all nonprivileged, responsive documents in her possession, custody, or control in a manner consistent with the foregoing principles; and it is further

**ORDERED** that the Court will convene a conference with counsel, which will be set in a separate text order, to discuss a procedure whereby Plaintiff may review the documents to assert any claim of privilege prior to the production to counsel for Defendant.

s/ Matthew J. Skahill<br>
MATTHEW J. SKAHILL<br>
United States Magistrate Judge

cc: Hon. Renée Marie Bumb
    Chief United States District Judge